

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1687-07

**DANIEL REY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### HALE  COUNTY

JOHNSON, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.  KELLER, P.J., filed a concurring opinion.

## O P I N I O N

Appellant was charged with and convicted by a jury of abandoning a child.  He was sentenced to two years' imprisonment, probated for five years, and a $3,000 fine.  Appellant appealed the conviction.  The court of appeals reversed the conviction and ordered an acquittal.  The state sought discretionary review of the judgment, which was granted by this Court. Because the court of appeals improperly construed the law, we reverse that court's ruling and remand this case to the court of appeals to review appellant's legal- and factual-sufficiency claims under the proper

standard.

**Facts**

Appellant was married to Michelle Morales. Together they had a daughter, who was one year old at the time of the charged offense. Morales also had a three-year-old son from a prior relationship. After the couple separated in late 2005, the children lived with their mother in Plainview, while Appellant lived in Muleshoe. In his statement to the Plainview Police Department (state's exhibit 2), Appellant wrote that he had called Morales on February 23, 2006, and said that he was coming to visit. When he arrived around 12:30 a.m., he could hear his daughter crying. Through the window, he could also see his stepson, D.M., asleep on the couch. He knocked on the door, and D.M. woke up. Appellant asked D.M. where his mother was. The child looked for her in the apartment, but his mother was not home. Appellant broke the front window, opened the door, removed both children from the apartment. He stated that he left his stepson with the neighbors, then took his daughter, and went back to Muleshoe. In Muleshoe, he waited "an hour" before reporting the unattended children because he didn't want to get his wife in trouble for leaving the children alone. When she still was not home an hour later, he called the Muleshoe police, who contacted the Plainview police. He asserted that he had not taken his stepson with him because his wife had "already tried to file charges and [he] was afraid th[at] she would say that [he] kidnapped him." The neighbor testified that appellant did not leave D.M. with him; he found D.M. alone, standing outside near the broken window glass without shoes or socks and "screaming for his father." No one else was present when officers arrived to investigate.

On appeal, appellant argued that the state's evidence against him was insufficient to show that he had "custody, care, or control," as required by the child-abandonment statute. The court of

appeals agreed, finding that appellant did not stand *in loco parentis* with D.M.; it reversed the conviction and rendered a judgment of acquittal. *Rey v. State,* 238 S.W.3d 840 (Tex. App.– Amarillo, 2007).

In its petition, the state argued that the gravamen of the offense is abandonment by one who has care, custody, or control of the victim, and the proof of a familial relationship with the victim is only one possible evidentiary fact to be considered by the fact-finder in its determination of whether a defendant committed the offense. We granted the state's ground for review, which asserted that the court of appeals erred in grafting an *in loco parentis* requirement onto TEX. PENAL CODE § 22.041(b).[1]

### Custody, Care, or Control Under § 22.041(b)

The case before us presents a question of the statutory construction of the meaning of "custody, care, or control" in § 22.041(b). This is a question of law that we review *de novo*. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). Section 1.05(a) of the Penal Code provides that provisions are to be "construed according to the fair import of their terms, to promote justice and effect the objectives of the code." TEX. PENAL CODE § 1.05(a). Section 1.05(b) refers us to the Code Construction Act, which provides that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE § 311.011(b).

Appellant was charged with abandoning or endangering a child under TEX. PENAL CODE §

---

[1] Did the court of appeals err in grafting an *in loco parentis* requirement onto TEX. PENAL CODE § 22.041(b), when the gravamen of the offense is abandonment by one who has care, custody or control of the victim, and the proof of a familial relationship with the victim is only one possible evidentiary fact to be considered by the factfinder in its determination of whether a defendant committed the offense. The court of appeals has decided an important question of state law that has not, but should be settled by the Court.

22.041(b).  That subsection states that

> [a] person commits an offense if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm.

We have not previously examined the phrase "custody, care, or control" as used in § 22.041(b).[2]

The legislature has given "custody, care, or control" a particular meaning within the statute that defines the offense of injury to a child, elderly individual, or disabled individual.  TEX. PENAL CODE § 22.04(d).  That subsection states that

> [f]or the purposes of an omission that causes a condition described by Subsection (a)(1), (2), or (3), the actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child . . ..

The conditions in the listed subsections are: 1) serious bodily injury; 2) serious mental deficiency, impairment, or injury; and 3) bodily injury.

In *Hicks v. State*, 241 S.W.3d 543 (Tex. Crim. App. 2007), we considered the issue of interpreting the meaning of "care, custody, or control" as used in § 22.04(d).  In that case, the court of appeals had held that "possession" equated to "care, custody, or control" as used in § 22.04(d). *Id*. at 544.  The definition of "possession" was taken from § 1.07(a)(39) of the Penal Code. However, this Court, citing *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App.1991), reiterated that, when statutes are clear and unambiguous, their plain meanings must be given effect unless it would lead to an absurd result that the Legislature could not possibly have intended. *Hicks*, 241 S.W.3d at 545-46.  Subsection 22.04(d)'s definition of "care, custody, or control" was "clearly and

---

[2]  The Court has said that "Sec. 22.041 imposes a duty upon those responsible for children to refrain from unreasonably subjecting the child to danger." *Schultz v. State*, 923 S.W.2d 1, 4 (Tex. Crim. App. 1996).

unambiguously set out," and "[b]ecause the language of Section 22.04(d) is clear, the court of appeals should have applied the plain language of subsection (d) and refrained from looking beyond the text of the statute in interpreting it." *Id*. at 546.

The purpose of both § 22.04 and § 22.041 is protection of vulnerable individuals. We may reasonably conclude that the clear, unambiguous language that defines "care, custody, and control" in § 22.04 is equally applicable to the same phrase in § 22.041, the immediately following statute. We hold that the proper meaning of the phrase "custody, care, or control" in § 22.041(b) is the same as that of § 22.04(d): "the actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child . . .."

**Analysis**

The state argues that the lower court's opinion grafted an *in loco parentis* requirement onto § 22.041(b). The court of appeals acknowledged that "the duty [under § 22.041(b)] does not have to be one imposed under the Family Code to fall within the penal provision[.]" *Rey*, 238 S.W.3d at 841. Nevertheless, the court of appeals discussed the nature of appellant's relationship with the child using an *in loco parentis* analysis.

> Simply put, the record is bereft of any evidence illustrating that appellant accepted the responsibility to protect, shelter, feed and care for the three-year-old. This is of import because the status of stepparent alone does not obligate the stepparent to care for his stepchild. Rather, the stepparent must "receive" the child into the family or accept the child as a family member before such obligations arise. . .. When that occurs, the parent stands *in loco parentis* towards the child, and the relationship with its accompanying duties continues as long as the child remains part of the family.

*Id*. at 842. The court of appeals's discussion appears to make an *in loco parentis* relationship determinative of "custody, care, or control" as to a stepparent relationship rather than the plain

language of the statute.

*In loco parentis* means "in the place of the parent" and refers to a person who assumes the duties of a parent. *Schrimpf v. Settegast*, 36 Tex. 296, 302-03 (1871-1872); *Coons-Andersen v. Andersen*, 104 S.W.3d 630, 634-35 (Tex. App.–Dallas 2003). A person *in loco parentis* to a child has the same rights, duties, and liabilities as the child's parents. *Id*. at 635. These rights, duties, and liabilities include, among other things, physical possession of the child, moral and religious training, choice of the residence of the child, protection and reasonable discipline, support of the child, (including providing the child with clothing, food, shelter, medical and dental care), the right to make decisions concerning the child's education, and "any other right or duty existing between a parent and child by virtue of law." TEX. FAM. CODE § 151.001(a). As can be seen from the Family Code's definition of the rights and duties of parents, a person *in loco parentis* has great responsibility and broad authority.

When we compare that list of duties and responsibilities to § 22.04(d)'s definition of "care, custody, or control," it is obvious that being *in loco parentis* not only includes "accept[ing] responsibility for protection, food, shelter, and medical care for a child," but greatly exceeds it. Thus, one who stands *in loco parentis* has, by its very definition, "care, custody, or control" of the child under § 22.04(d), but a person, such as a baby-sitter, who has at least temporary "care, custody, or control," is not *in loco parentis*.

The court of appeals erred in framing the question as whether appellant, because of his status as stepparent of the child, became a person *in loco parentis* to the child and therefore had "custody, care, or control." Proper framing keeps the question within § 22.04(d)'s definition: whether appellant "by act, words, or course of conduct acted so as to cause a reasonable person to conclude

that he has accepted responsibility for protection, food, shelter, and medical care for a child . . ..”

The state argues correctly that the court of appeals erred in grafting an *in loco parentis* requirement onto § 22.041(b), but it also argues for a definition of “custody, care, or control” that differs from the definition found in § 22.04(d); the state argues that “custody, care, or control” should be considered disjunctively. Thus, a person could have only care of the child or only control of the child. The state’s cases in support of this conclusion, *Iowa v. Johnson*, 528 N.W.2d 638 (Iowa 1995), and *Iowa v. Friend*, 630 N.W.2d 843 (Iowa App.–2001), are unavailing. *Boykin* demands adherence to the text of the statute. If, and only if, the language is ambiguous or the plain language would lead to absurd results are we permitted to consult resources outside of the statute. We held in *Hicks* that “care, custody, or control” in § 22.04(d) is not ambiguous, thus there is no need to go outside the plain language in that subsection.

## Conclusion

We conclude that the court of appeals erred in making the appellant’s lack of an *in loco parentis* relationship with D.M. determinative. The proper definition of “custody, care, or control” under § 22.041(b) is the same as that of § 22.04(d): whether an accused, “by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care . . ..”

We therefore remand this case to the court of appeals to review appellant’s legal- and factual-sufficiency claims using this standard for establishing when an actor has assumed “care, custody, or control” of a child.

Delivered: April 1, 2009
Publish